IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BERNARD EDWARD PLAINTIFF, | ) ) ) | |
| v. | ) ) ) | 2:06-CV-298-MHT |
| ANTHONY CLARK and BRETT HOLMES, DEFENDANTS. | ) ) ) ) | |

## SPECIAL REPORT OF DEFENDANT BRETT HOLMES

COMES NOW Brett Holmes, a defendant in this action and submits his Special Report to the Court as follows:

### I.    INTRODUCTION

The Plaintiff, Timothy Bernard Edwards, filed his Complaint in the United States District Court for the Middle District of Alabama on April 4, 2006. In his Complaint, the Plaintiff appears to allege that on March 22, 2006, he was arrested without probable cause and that excessive force was used in his arrest.

Edwards also sued Covington County Sheriff Anthony Clark and claims that he was denied medical attention while an inmate at the Covington County Jail. The issues associated with these issues have been thoroughly briefed in Sheriff Clark's Special Report.

On April 12, 2006, the Court ordered the Defendant to file a Special Report. On June 12, 206 the Court granted an extension until July 20, 2006 for the filing of the report.

## II.     PLAINTIFF'S ALLEGATIONS

The Plaintiff appears to allege that reference Brett Holmes read, in part, as follows:

> Agent Brett Holmes willfully, intentionally, malicious[ly] arrest[ed] and [detained] without probable cause and caused the plaintiff to be put in false imprisonment and physical brutality before he was put imprisonment and sadistically for [the] very purpose of causing harm, evidence of deliberate indifference, because denied medical care. Defendant [Sheriff] Anthony Clark denied plaintiff medical care after he was put imprisonment, Both defendants [are] the blame.

## III.     DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendant Brett Homes denies the allegations made against him by the Plaintiff. The Plaintiff was arrested March 22, 2006. Otherwise, all of the allegations are untrue and completely without basis in law or fact.

There was probable cause for the arrest.

De minimis force was used to make the arrest.

## IV.     SUMMARY OF FACTS

### a.     Information Leading Up to the Issuance of a Warrant.

In March of 2006, Brett Holmes was narcotics investigator with the Opp Police Department. He was assigned to the 22d Judicial Circuit Drug Task Force of Covington County. On March 15, 2006, he received information from a reliable, confidential informant regarding Edwards. The informant provided the following information:

1.     Edwards was in possession of cocaine, crack cocaine, and marijuana.

---

2.      The informant had been inside the residence of Timothy Edwards and Ramona Denise Womack at Lot #23 Lunsford Trailer Park in Opp, Alabama.

3.      Inside the house, the informant had observed approximately 30 ounces of crack cocaine in the kitchen to the left of the kitchen sink.

4.      Inside the house, the informant observed about one-half of a kilo of cocaine hydrochloride in the kitchen to the right of the kitchen sink.

5.      The informant had observed Edwards "cooking" crack cocaine inside the residence.

6.      Inside the house, the informant observed about 10 pounds of marijuana separated into one pound plastic bags in the kitchen on the kitchen table.

7.      On several occasions, the informant witnessed Edwards receive stolen property in return for drugs.

8.      The informant also described seeing two handguns in the residence, one of which was consistent with a handgun reported stolen to the Covington County Sheriffs Department.

With this information, Holmes drafted an Application and Affidavit for Search Warrant and presented it to the court, specifically to Covington County District Judge Frank L. McGuire III. On March 15, 2006, a search warrant was issued. (Affidavit of Brett Holmes)

On March 22, 2006, before the warrant was executed but less than ten (10) days from the date it was issued, Opp Police Investigator Mark Kyser arrested a burglary suspect. When the suspect brought up Timothy Edwards, Investigator Kyser contacted Holmes so he could hear what the suspect had to say. From this suspect, Holmes learned the following additional information:

1.  The suspect had recently taken the money he made from selling a stolen gun and had made contact with Timothy Edwards at Lot# 23 Lunsford Trailer Park in Opp, Alabama.

2.  The suspect then obtained one hundred dollars worth of powdered cocaine at Lot# 23 Lunsford Trailer Park in Opp, Alabama.

3.  While at the residence, the suspect saw a large amount of cocaine inside the mobile home on a kitchen counter next to the sink.

4.  The suspect had seen cocaine in the mobile home on many occasions

5.  Edwards manufactured crack cocaine at the mobile home.

That same day, Holmes completed a supplement to the Application and Affidavit for Search Warrant and presented to Judge McGuire who signed it. (Affidavit of Brett Holmes)

The information Holmes learned before getting the warrant all turned out to be true. (Certified copies of Covington County Circuit Court files)

Interestingly, even Edwards makes no attempt to deny the existence of drugs and guns. He simply denies that he owned the mobile home. (Oral Sworn Statement of

Timothy Bernard Edwards, Pages 3, 7-10, 16 and Certified copies of Covington County Circuit Court files)

  b.  **The Execution of the Warrant and the Arrest**

  March 22, 2006, the search warrant was executed by Holmes and other Drug Task Force Agents.  When executing the warrant, they first attempted to secure the residence by moving the individuals who were in house out into the front yard.  Once this was done, individuals that were in the front yard stated that Timothy Bernard Edwards was still in the house. (Affidavit of Brett Holmes)

  Edwards admits that he was trying to run away when he realized law enforcement officers were present:

   Q.  And when you saw the police arrive, you decided to try to run; right?

   A.  Yes, sir.

(Oral Sworn Statement of Timothy Bernard Edwards, Page 3)

  Timothy Bernard Edwards was discovered face down, on his stomach, hiding under a bed in a back bedroom. (Affidavit of Brett Holmes)  Edwards admits this. (Oral Sworn Statement of Timothy Bernard Edwards, Pages 3 and 4)

  When Edwards was discovered, a gun was also very near him.  He was not holding the weapon, but, based upon Holmes training and experience he realized that the weapon was close enough to Edwards that Edwards could have easily grabbed it. (Affidavit of Brett Holmes)

  While Edwards claims to be uncertain of whether or not a gun was in the room, he does not dispute this fact:

---

A.   . . . Mr. Holmes was on the stand, and they asked about the weapons. And he said that there was a weapon in the room that I was in. And that's how I found out there was one in there.

Q.   Okay. And that's my point. And, again, I'm not asking you to admit that it was your gun. I'm just pointing out that you don't dispute if someone else said they saw a gun in this room -- because you really weren't familiar with that room -

A.   Yes, sir.

Q   Right?

A.   Yes, sir.

Q.   And so you're not arguing with anyone who says there was a gun in the room; is that correct?

A.   Like I said, I can't because, like I said, I don't really -- I didn't know what -- I didn't look around. I was trying to find an exit.

Q.   Right. You weren't looking around the room. You were just trying to hide when you were under the bed; right?

A.   Yes, sir.

Q.   And so if somebody else said they saw a gun in the room, you wouldn't be able to argue with them; is that right?

A.   I couldn't argue --- like I said, couldn't argue because I didn't -- I didn't haven't been in there like that so- -

(Oral Sworn Statement of Timothy Bernard Edwards, Pages 9 and 10)

In the interest of officer safety, Edwards was quickly dragged out of reach of the weapon. He was not dragged completely out of the room.  Holmes did not measure how far Edwards was dragged, but Holmes estimates that it was only a few feet.  Again, the

only reason for this was to insure that Edwards was out of reach of the weapon. (Affidavit of Brett Holmes)

No other force was used to arrest Timothy Bernard Edwards. (Affidavit of Brett Holmes)

Holmes never struck Edwards in the face, the back, or any other part of his body. Holmes never observed any other officer strike Timothy Bernard Edwards in the face, the back, or any other part of his body. Holmes has no knowledge of anyone striking Timothy Bernard Edwards in the face, the back, or any other part of his body. (Affidavit of Brett Holmes)

Edwards claims that during the arrest his arm was grabbed and twisted, he received a blow to his back, and a blow to the side of his face. **These facts are disputed.** For this Report, however, there are two significant points regarding these allegations. First, the use of force Edwards describes – even if taken as true – does not constitute excessive force. This will be further discussed below.  Second, Edwards does not claim that Holmes did any of these things. The following is from Edwards Sworn Statement:

> Q.    And you remember your arm being grabbed by one of the officers?
>
> A.    Uh-huh.
>
> Q.    Right?
>
> A.    Yes, sir.
>
> Q.    **You don't know who that officer was that grabbed your arm;** correct?
>
> A.    No, sir.
>
> Q.    Is that correct?

A.    Yes, sir.

Q.    You remember being hit in the back and then going back down on the floor again?

A.    Yes, sir. They grabbed my arm and twisted it and went to raise me up. When they were raising me up, somebody stepped in my back and pushed me back down to the floor.

Q.    **And you're not claiming that Brett Holmes did that --**

A.    No, sir.

Q.    --right?       Is that right?

A.    Yes, sir.

Q.    And then you remember being struck in the face -- on the side of the face. You think was with someone's foot or boot; right?

A.    Yes, sir. I seen their foot.

Q.    You saw the foot? **And, again, you're not saying that that was Brett Holmes that did that;** correct?

A.    Yes, sir.

(Oral Sworn Statement of Timothy Bernard Edwards, Pages 5 and 6)

c.    **The Plaintiff's <u>LACK</u> of Injuries**

The arrest did not cause any visible injury to Timothy Bernard Edwards.  At the time of the arrest and following, Edwards was conscious, he had no difficulty breathing, he was fully capable of walking, and he showed no signs of bleeding, trauma, wounds, or illness. (Affidavit of Brett Holmes)

Holmes states that if Edwards received any scratch or carpet burn from being dragged out of reach of the weapon, it was not visible to him, it was not brought to his attention, and he never heard Edwards complain of such. (Affidavit of Brett Holmes)

---

**SPECIAL REPORT OF DEFENDANT BRETT HOLMES**
**PAGE 8 OF 17**

The Special Report of Sheriff Clark deals extensity with Edward's medical condition while in jail.  As it relates to the condition of Edwards immediately after the arrest, the following from Clark's Special Report bears repeating:

> At the time Plaintiff was incarcerated in the Covington County Jail (March 22, 2006) he was examined by jail medical personnel, who noted on a Medical Screening Form that Plaintiff was not injured pursuant to his arrest…Further, a physical assessment completed at the time of Plaintiff's incarceration indicates that he appeared, in all respects, "o.k.," and that the Plaintiff informed the jail nurse that he suffered from back aches at times…March 24, 2006, *two days* after his arrest, Plaintiff filed a Sick Call Slip complaining that he suffered from "real bad headaches," back pain, shortage of breath, sore legs, and a skinned hip, which he appears to claim are a result of his arrest. Id. This Sick Call Slip was received by the jail medical staff on March 25, 2006, and the Plaintiff was examined by a jail nurse on March 27, 2006. Id. As a result of that examination, the Plaintiff was prescribed Ibuprofen and Robaxin, both for pain relief. Id.

(Special Report of Sheriff Clark, page three, citations omitted, emphasis added)

During his sworn statement, Edwards was asked about the Medical Screening Form that he signed on March 22, 2006.  He acknowledged that the form reflected the following:

1. Edwards was conscious.
2. Edwards had no difficulty breathing.
3. Edwards was not injured as a result of the arrest.
4. Edwards was capable of responding.
5. Edwards was capable of walking on his own.
6. Edwards showed no signs of trauma.
7. Edwards showed no signs of bleeding.
8. Edwards showed no signs of wounds.
9. Edwards had skin that was in good condition.
10. Edwards seemed fine at time if intake.

(Oral Sworn Statement of Timothy Bernard Edwards Pages 11-14)

He further acknowledges that he signed the March 22, 2006 form. Id.

---

**SPECIAL REPORT OF DEFENDANT BRETT HOLMES**
**PAGE 9 OF 17**

## V.  LEGAL ANALYSIS

### a.  The Uncontested Facts Clearly Show That There Was Probable Cause.

Officer Holmes had reliable, detailed information that Edwards was making and selling drugs from the mobile home located at Lot #23 Lunsford Trailer Park in Opp, Alabama.  Two different eye witnesses provided this information.  Holmes took this information to the court.  The judge found probable cause and issued a search warrant.

The United States Supreme Court has stated that:

> On many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules. . . The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances….We have stated, however, that  the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, …and that the belief of guilt must be particularized with respect to the person to be searched or seized . . . Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision. . . . To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.

Maryland v. Pringle, 540 U.S. 366, 370-371, 124 S.Ct. 795,799 - 800 (U.S. 2003) (internal quotation marks and citations omitted)

In this case, a probable-cause determination was made by a judicial officer, both before and promptly after the arrest. (See Search Warrant and Order of District Judge Frank L. McGuire, III dated May 16, 2006 which is contained in the certified records from Covington County attached to the Special Report)  see Datz v. Kilgore , 51 F.3d 252, 254 (11th Cir. 1995),

If probable cause did not exist in this case, then probable cause is a mythical creation that has never existed.

**b.    The Uncontested Facts Clearly Show That There Was No Use Of Excessive Force by Brett Holmes**

Holmes denies that Edwards was ever hit anywhere on his body.  Both Holmes and Edwards agree that Holmes did not strike Edwards.  The accusation of force used by Holmes is that he pulled him away from a gun that was in the room.  Even if one assumes the facts most favorable for Edwards, this does not amount to a use of excessive force. The Eleventh Circuit "has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Graham v. Connor, 490 U.S. 386, 396-97 (1989)

c.    Office Holmes is Entitled to Qualified Immunity

"Qualified immunity offers complete protection for governmental officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002)  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. at 1194  "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Id.

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194

"Once the defendant establishes that he was in the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194.  This entails a two-part inquiry. See id.

"As a threshold question, a court must ask, 'taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'"  Lee, 284 F.3d at 1194.  "If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established." Id.

In this case, it is undisputed that Officer Holmes was acting within the scope of his discretionary authority.  Therefore, the burden shifts to the plaintiff to show that the

defendant violated a constitutional right, and that the right was clearly established at the time of the alleged violation. O'Rourke v. Hayes, 378 F.3d 1201, 1206 (11th Cir. 2004).

"The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing the suspect had committed or was committing an offense." Id.

As was discussed above, probable cause existed in this case. For purposes of qualified immunity the issue, "however, is not whether probable cause existed but instead whether there was arguable probable cause." Crosby, 394 F.3d at 1332. "Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." Id. "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." Id. Certainly the facts in this case establish arguable probable cause. Holmes is entitled to qualified immunity on this issue.

Therefore, the only remaining issue for Edwards is the reasonableness of the force Officer Holmes used to effect his arrest.

In Graham v. Connor, the Supreme Court provided three factors that guide the determination of reasonableness when courts evaluate police use of force. 490 U.S. 386 (1989). Those factors are: (1) the severity of the crime, (2) whether the arrestee poses an immediate threat to the safety of the officer or others, (3) whether the arrestee is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396.

In <u>Graham</u>, the Supreme Court instructed that force decisions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 390 U.S. at 396.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Graham</u>, 390 U.S. at 396-97.

Edwards does not deny that he was hiding from police. Edwards does not deny that guns were in the house. Edwards does not deny that a gun was very near him when he was discovered. Under these circumstances, it was not objectively unreasonable for Officer Holmes to pull Edwards out of reach of the weapon. Certainly Officer Holmes did not violate clearly established law.

Edwards admits that Holmes did not twist his arm, push him in the back, or strike the side of his face, and Holmes denies knowledge of any such force being used by anyone. Therefore, further discussion of these allegations may be unnecessary. Out of an abundance of precaution, however, it should be pointed out that such allegations do not constitute excessive force, even if one assume they are true.

In <u>Nolin v. Isbell</u>, the plaintiff claimed an officer "grabbed him from behind by the shoulder and waist, threw him against a van three or four feet away, kneed him in the back, and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." 207 F.3d 1253, 1255 (11th Cir. 2000). As a result, the plaintiff claimed he suffered "bruising to his forehead, chest, and wrists." <u>Id.</u>

Under those facts, the Eleventh Circuit held the officer was entitled to qualified immunity because "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin, 207 F.3d at 1257.

Similarly, in Jones v. City of Dothan, the United States Court of Appeals for the Eleventh Circuit also held police officers were entitled to qualified immunity against the plaintiff's § 1983 claim, despite the plaintiff's allegation that the officers "slammed" him against a wall. 121 F.3d 1456, 1458 (11th Cir. 1997).

In Post v. City of Ft. Lauderdale, the Eleventh Circuit granted qualified immunity to an officer who allegedly pushed the plaintiff into a wall. 7 F.3d 1552, 1559-60 (11th Cir. 1993). The court stated even though the pushing "might have been unnecessary, this pushing was not plainly unlawful." Id. at 1559.

Under the undisputed facts, Officer Holmes is entitled to qualified immunity. The undisputed facts do not give rise to a constitutional violation, much less a violation of clearly established law.

## VI.     DEFENSES

Brett Holmes pleads the following defenses:

1.     Plaintiff's Complaint separately and severally fails to state a claim upon which relief can be granted. Defendant did not deprive Plaintiff of any constitutional right to which he is entitled.

2.     Qualified immunity in his individual capacity.

3.     State-agent immunity.

4.     Estoppel.

5.     Collateral estoppel.

6.      The Rooker-Feldman doctrine.

7.      Defendant reserves the right to add additional defenses upon a complete investigation of Plaintiff's claims, completion of any discovery allowed, and if any further pleading is required or allowed by the Court.

## VII.     MOTION FOR SUMMARY JUDGMENT

Brett Holmes moves the Court to treat this Special Report as a motion for summary judgment.

## VIII.    CONCLUSION

The plaintiff's claim is without merit and, for the above stated reasons, the claims against Brett Holmes should be dismissed.  The defendant requests this Court to enter judgment in his favor and grant unto him costs and attorney's fees pursuant to law and 42 U.S.C. § 1988.

Respectfully submitted this the 19th day of July, 2006.

                                     /s/ R. Todd Derrick
                                    R. Todd Derrick (DER006)
                                    Attorney for the Defendant, Brett Holmes

OF COUNSEL:

COBB, SHEALY, CRUM & DERRICK, P.A.
Post Office Box 6346
Dothan, Alabama  36302-6346
Telephone (334) 677-3000
Fax (334) 677-0030

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing with the Clerk

of the Court using the CM/EFC system which will send notification of such filing to the

following:

Scott Wayne Gosnell, Esquire
Webb & Eley
Post Office Box 240909
Montgomery, Alabama 36124
(334) 262-1850

I hereby certify that I have mailed by United States Postal Service the document

to the following non-CM/EFC participant:

Timothy Bernard Edward
Covington County Jail
290 Hillcrest Drive
Andalusia, Alabama 36420

This the 19th day of July, 2006.

/s/ R. Todd Derrick
R. Todd Derrick

---

**SPECIAL REPORT OF DEFENDANT BRETT HOLMES**
**PAGE 17 OF 17**